J-S14032-17
J-S14033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN CARL BUTTOLPH | : | |
| | : | |
| Appellant | : | No. 891 MDA 2016 |

Appeal from the PCRA Order September 17, 2015
in the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-CR-0000117-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN CARL BUTTOLPH | : | |
| | : | |
| Appellant | : | No. 892 MDA 2016 |

Appeal from the PCRA Order March 22, 2016
in the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-CR-0000117-2009

BEFORE: GANTMAN, P.J., SHOGAN, and STRASSBURGER[*], JJ

MEMORANDUM BY STRASSBURGER, J.: **FILED APRIL 25, 2017**

Steven Carl Buttolph (Appellant) *pro se* appeals from the order entered September 17, 2015, docketed at 891 MDA 2016, which granted in part and denied in part a motion decided during the litigation of his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.

---

[*] Retired Senior Judge assigned to the Superior Court.

We quash that appeal. Appellant also appeals from the order entered March 22, 2016, docketed at 892 MDA 2016, which denied his petition filed pursuant to the PCRA. We affirm.[1]

We provide the following background. In the early morning hours of May 3, 1992, Edward Williams, an owner of an adult bookstore, found his store clerk, Steven V. Gosline, dead inside the store. In addition, he discovered a large sum of money was missing from the cash register. An autopsy revealed Gosline's cause of death as multiple traumatic injuries to the head and the manner of death as homicide. Police began an investigation.

Donald Shreffler, a friend of Gosline's, told police that two other individuals were in the store when he left the night before at 11:30 p.m. He identified Jeff Mayhew and "Steve," who was known as a customer at another adult bookstore. Steve was eventually identified as Appellant. Appellant was interviewed by police and admitted to being in the store on that night, but did not admit to being involved in Gosline's death.

Three years later, on January 23, 1995, Marcie Buttolph, Appellant's wife, contacted police and reported that Appellant told her that he killed

_____

[1] Appellant has also filed an application to strike the Commonwealth's brief for this appeal because the Commonwealth did not file a separate, different brief at this docket number. Instead, the Commonwealth filed one brief for both docket numbers. The Commonwealth subsequently filed the identical brief at this docket number. Because our review is not impeded in any way, we deny Appellant's application. **See** Pa.R.A.P. 2101.

Gosline. Appellant was charged in connection with Gosline's murder, but Marcie then refused to testify at the preliminary hearing. Accordingly, the charges were withdrawn.

In 2008, police again interviewed Marcie. She and Appellant were no longer married, as they had divorced in 1997.[2] Marcie agreed to allow police to wiretap her phone conversations with Appellant in an attempt to learn more about his involvement in this murder. A number of those recorded conversations contained incriminating statements.

In February 2009, Appellant was arrested and charged with criminal homicide, robbery, and theft by unlawful taking. Appellant hired Attorney Jerry Russo to represent him. At Appellant's preliminary hearing, Marcie testified on cross-examination by Attorney Russo about Appellant's having admitted to her that he killed Gosline during the course of robbing the store. The charges were held for trial.

_____

[2] In addition to telling police once again that Appellant killed Gosline, she informed police that Appellant regularly smoked Marlboro cigarettes sold in a red box. Marlboro cigarette butts had been found at the crime scene, and police ordered DNA testing of them. The results returned a "partial DNA profile consistent with" Appellant. Affidavit of Probable Cause, 2/20/2009, at 3.

Marcie also reported to police that Appellant told her 1) that he stabbed Gosline, but Gosline did not die so Appellant picked up a pipe and beat him to death; 2) that Appellant stole $1,500 from the store; 3) that if Marcie told anybody about it she would never see their son again; and 4) that he disposed of the murder weapon and his clothes in the Susquehanna River. *See* Motion to Suppress, 11/29/2011, at § 4.

- 3 -

On November 29, 2011, Appellant filed a pre-trial motion to suppress testimony from Marcie, arguing that her testimony should be prohibited on the basis of the confidential communication marital privilege codified at 42 Pa.C.S. § 5914. On July 31, 2012, the trial court denied Appellant's motion. Appellant filed an appeal to this Court, and on November 26, 2013, this Court concluded that we lacked jurisdiction to entertain an appeal from this interlocutory order. **See Commonwealth v. Buttolph**, 91 A.3d 1296 (Pa. Super. 2013) (unpublished memorandum).

A jury was selected on April 29 and 30, 2014. On May 1, 2014, Appellant and the Commonwealth entered into a negotiated guilty plea agreement. Appellant pled guilty to third-degree murder in exchange for the Commonwealth's withdrawing the other charges. In addition, the Commonwealth agreed to recommend Appellant be sentenced to ten to 20 years of incarceration, the maximum sentence available for third-degree murder in 1992. Furthermore, the agreement provided that "unless [Appellant] is involved in criminal activity, extensive disciplinary action, or takes unwarranted action against th[e district attorney's office], [the district attorney] will not oppose his parole consideration at his minimum." N.T., 5/1/2014, at 5 (unnecessary capitalization omitted).

Appellant signed a written plea colloquy and the trial court conducted a thorough on-the-record colloquy. The trial court pointed out specifically that Appellant was "giving up [his] right to challenge many aspects on appeal;

like results of suppression motions, basically anything factually regarding this case[.]" *Id*. at 9 (unnecessary capitalization omitted). The trial court told Appellant that the only things he could challenge on direct appeal were "the voluntariness of [his] guilty plea, the jurisdiction of [the trial court] and the legality of [the] sentence." *Id*. at 10 (unnecessary capitalization omitted). The trial court accepted the plea and sentenced Appellant in accordance with his plea agreement.

On May 12, 2014, Appellant filed *pro se* a post-sentence motion challenging the discretionary aspects of his sentence. On May 13, 2014, the trial court denied Appellant's motion.[3] On May 21, 2014,[4] court-appointed counsel from the office of the public defender, Attorney Barbara Wevodau, filed timely a notice of appeal on Appellant's behalf, which was docketed at 1464 MDA 2014. Attorney Wevodau then informed Appellant that after review of the file, along with Appellant's communications to her, she recommended he file a PCRA petition asserting claims of ineffective assistance of counsel. In addition, Attorney Wevodau notified the trial court

---

[3] It is well-settled that where "[t]he trial court imposed the sentence Appellant negotiated with the Commonwealth[,] Appellant may not … seek discretionary review of that negotiated sentence." **Commonwealth v. Reid**, 117 A.3d 777, 784 (Pa. Super. 2015). **See also Commonwealth v. O'Malley**, 957 A.2d 1265, 1267 (Pa. Super. 2008) ("One who pleads guilty and receives a negotiated sentence may not then seek discretionary review of that sentence.").

[4] According to Appellant, he applied for a public defender on May 11, 2014.

that due to the caseload at the public defender's office, this case needed to be re-assigned to Attorney William Shreve. On November 24, 2014, the court issued an order appointing Attorney Shreve. On December 31, 2014, Attorney Shreve discontinued Appellant's direct appeal, and on February 23, 2015, Attorney Shreve filed a timely, counseled PCRA petition on Appellant's behalf.

On March 23, 2015, Attorney Shreve filed a petition to withdraw as counsel and no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On April 8, 2015, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition in 20 days without a hearing. The PCRA court also permitted Attorney Shreve to withdraw.

On June 4, 2015, Appellant *pro se* filed a motion requesting more time to respond to the PCRA court's Rule 907 notice. He also requested that his direct appeal rights be reinstated. On September 17, 2015, the PCRA court entered an order granting Appellant additional time to file a response to the Rule 907 notice. The PCRA court denied Appellant's request to reinstate his direct appeal.

On October 4, 2015, Appellant *pro se* filed an amended PCRA petition. On October 19, 2015, Appellant *pro se* filed a notice of appeal from the

September 17, 2015 order.[5]   The PCRA court took no further action in this matter until March 22, 2016, when it dismissed Appellant's PCRA petition. Appellant timely filed a notice of appeal from that order, which was docketed at 892 MDA 2016.   The PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant filed a statement raising 34 issues.   On July 26, 2016, the PCRA court filed a memorandum.

Because we are presented with two separate appeals from two separate orders, we consider them separately.

### *891 MDA 2016*

The appeal docketed at 891 MDA 2016 is from the PCRA court's September 17, 2015 order, which denied Appellant's petition to reinstate his right to a direct appeal and permitted him more time to file a response to PCRA counsel's no-merit letter filed pursuant to *Turner*/*Finley*.

This Court has jurisdiction over final orders. *See* 42 Pa.C.S. § 742. The definition of a final order is provided in Rule 341 of the Pennsylvania Rules of Appellate Procedure.   "Rule 341 is fundamental to the exercise of jurisdiction

---

[5] This appeal, filed on October 19, 2015, was docketed in this Court over seven months later, on June 6, 2016, at 891 MDA 2016.  It is not clear why the clerk of courts did not follow the mandates of Pa.R.A.P. 905, which provide that upon receipt of a notice of appeal, the clerk of courts shall transmit it to this Court.

by this court." ***Prelude, Inc. v. Jorcyk***, 695 A.2d 422, 424 (Pa. Super. 1997) (*en banc*). Rule 341 provides, in relevant part, as follows.

    **(b)** **Definition of final order**.--A final order is any order that:

        (1)   disposes of all claims and of all parties; or

        (2)   RESCINDED

        (3)   is entered as a final order pursuant to paragraph (c) of this rule.

Pa.R.A.P. 341.

The order entered on September 17, 2015 did not dispose of all claims or all parties, because it clearly permitted Appellant to continue to litigate his PCRA petition. In addition, it was not entered as a final order pursuant to Pa.R.A.P. 341(c). Appellant has not alleged, nor can we discern, any other basis for this Court's jurisdiction over that appeal. Thus, we quash the appeal at 891 MDA 2016. However, the issues Appellant raised in that appeal are preserved for our review by virtue of the PCRA court's dismissal of his petition.[6] Accordingly, we will review those issues in connection with our review of Appellant's timely-filed appeal from the March 22, 2016 order.

***892 MDA 2016***

The appeal docketed at 892 MDA 2016 is from the PCRA court's March 22, 2016 order which dismissed Appellant's PCRA petition. Appellant has

---

[6] ***See Morningstar v. Hallett***, 858 A.2d 125, 126 n.1 (Pa. Super. 2004) ("[A] notice of appeal from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment.").

raised numerous issues for our review, all of which contend that the PCRA court erred in denying relief.

Before we reach the issues presented by Appellant, we consider the PCRA court's conclusion that Appellant has violated Pa.R.A.P. 1925(b) by presenting 34 issues in his statement of errors complained of on appeal.[7] **See** PCRA Court Opinion, 7/26/2016, at 1 (unnumbered). Based on the sheer number of issues set forth in this statement, the PCRA court analogizes this case to our decision in **Kanter v. Epstein**, 866 A.2d 394 (Pa. Super. 2004). In **Kanter**, this Court held the defendants had waived all issues on appeal by raising 104 issues for review in violation of Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall **concisely** identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." (emphasis added)). We held that "[b]y raising an outrageous number of issues, the [d]efendants have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise." **Kanter**, 866 A.2d at 401. We agree that the number of issues hampers our review. In addition to the number of issues in the statement, our review is further impeded by the fact that Appellant's briefs on appeal are not models of clarity. He raises numerous issues, sub-issues, and arguments within

_____

[7] Appellant's "concise" statement spans seven single-spaced pages. **See** Statement of Matters Complained of on Appeal, 7/1/2016.

those issues, most of which are rambling and include citation to law irrelevant to the issue presented. Nevertheless, the PCRA Court attempted to address the primary issues it could identify, and we will endeavor to do the same. **See** PCRA Court Opinion, 7/26/2016, at 2-5 (unnumbered).

In reviewing an appeal from the denial of PCRA relief, "[w]e must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Mikell**, 968 A.2d 779, 780 (Pa. Super. 2009) (quoting **Commonwealth v. Lawrence**, 960 A.2d 473, 476 (Pa. Super. 2008) (citations omitted)). Since most of Appellant's claims concern the ineffective assistance of counsel, we point out the following.

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

**Commonwealth v. Franklin**, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

We first consider issues related specifically to the entry of Appellant's negotiated guilty plea. In doing so, we bear in mind that "Appellant's claim for ineffective assistance of counsel in connection with advice rendered regarding whether to plead guilty is cognizable under the PCRA pursuant to 42 Pa.C.S. § 9543(a)(2)(ii)." **Commonwealth v. Barndt**, 74 A.3d 185, 191 (Pa. Super. 2013).

> The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea.
>
> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome.
>
> Our Supreme Court also has held as follows:
>
>> Central to the question of whether [a] defendant's plea was entered voluntarily and knowingly is the fact that the defendant know and understand the nature of the offenses charged in as plain a fashion as possible…. [A] guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, … a trial judge [and, by extension, plea counsel] is not required to go to unnecessary lengths to discuss every nuance of the law regarding a defendant's waiver of his right to a

> jury trial in order to render a guilty plea voluntary
> and knowing.

**Barndt**, 74 A.3d at 192-93 (Pa. Super. 2013) (citations and quotation marks omitted).

Appellant claims that Attorney Russo was ineffective by not objecting to Appellant's guilty plea during the proceedings, which thereby permitted him to enter the plea unknowingly and involuntarily. **See** Appellant's Brief filed at 892 MDA 2016 (Appellant's Second Brief) at 13-19; 29-31. Specifically, Appellant argues that his plea colloquy was defective because the trial court did not inform him of all of the elements of third-degree murder, particularly malice. **Id**. at 13-15. Appellant also complains that he was never informed of the factual basis of the murder. **Id**. at 15-17.

In considering whether a guilty plea colloquy is defective, we bear in mind the following.

> The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Under Rule 590, the court should confirm, *inter alia*, that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. The reviewing [c]ourt will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

***Commonwealth v. Kpou***, 153 A.3d 1020, 1023-24 (Pa. Super. 2016) (internal citations and quotation marks omitted). "[A] defendant is bound by the statements which he makes during his plea colloquy." ***Commonwealth v. Barnes***, 687 A.2d 1163, 1167 (Pa. Super. 1996) (citations omitted). As such, a defendant may not assert grounds for withdrawing the plea that contradict statements made when he entered the plea. ***Id***. (citation omitted).

The trial court asked the following questions, in relevant part, about the nature of the charges and the factual basis of his plea.

> THE COURT: Do you understand the nature of the charges to which you are pleading guilty?
>
> [Appellant:] Yes, sir.
>
> THE COURT: Do you understand the factual basis to which you are pleading guilty?
>
> [Appellant:] Yes, sir.
>
> THE COURT: And do you understand that the crux of that factual basis is that on May 2nd, or into May 3rd, of 1992, that you killed a Donald V. Gosline at an adult book store? []
>
> [Appellant:] Yes, sir.
>
> ***
>
> THE COURT: Is there any reason you would not understand what you're doing today?
>
> [Appellant:] No, sir.
>
> THE COURT: Okay. And by entering this guilty plea, are you admitting to the killing of Donald Gosline?

[Appellant:] Yes, sir.

N.T., 5/1/2014, at 7, 10 (unnecessary capitalization omitted).

Trial counsel then took great pains to ensure Appellant understood the consequences of what he was doing.

> [ATTORNEY RUSSO:] With respect to the voluntariness of [Appellant's] plea, I did want the court to be aware -- and I believe [Appellant] would confirm this -- that, not only over the last two days personally but also by telephone, he has discussed the plea offers with myself; with our investigator, Skip Gochenour, who is present in the court with us today; and as well to my partner, Joseph Sembrot, who handled most of the appellate work with respect to the issue that I had just briefly discussed with the Court; as well as to Joshua Lock, who is of counsel to our firm.
>
> I can't articulate the hours that were spent discussing the various issues attendant to the plea; but [Appellant], over the past week to two weeks, has had the benefit of the counsel of each of us.
>
> I would also state -- and I believe he would confirm this as well -- he has also discussed the plea offer with his family, his mother and his father, both of whom are *en* route from Texas now to Pennsylvania. They were anticipating arriving over the weekend to be here for trial. But I know that he has had the benefit of speaking to both of his parents before this afternoon's proceeding. And I just wanted the Court to be aware of those aspects of the plea as well.
>
> THE COURT: [Appellant], do you have any questions?
>
> [Appellant:] No, sir.
>
> THE COURT: Are you satisfied that your plea is knowing, intelligent, and voluntary?
>
> [Appellant:] Yes, sir.

- 14 -

N.T., 5/1/2014, at 12-14 (unnecessary capitalization omitted).[8]

"Our Supreme Court has repeatedly stressed that where the totality of the circumstances establishes that a defendant was aware of the nature of the charges, the plea court's failure to delineate the elements of the crimes at the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea." **Commonwealth v. Morrison**, 878 A.2d 102, 107 (Pa. Super. 2005). "Whether notice [of the nature of the charges] has been adequately imparted may be determined from the totality of the circumstances attendant upon the plea[.]" **Id**.

Instantly, Appellant's argument that trial counsel should have objected to the guilty plea colloquy as being insufficient is wholly unsupported by the record. Appellant's knowledge of and participation in this litigation is extensive, going back to his first arrest in 1995. After Appellant was arrested for a second time in 2009, he participated in a preliminary hearing and litigated extensively a motion to suppress prior to the entry of his guilty plea in 2014. Moreover, at the time he entered into the guilty plea, Appellant had already picked his jury and trial was scheduled to commence imminently. For Appellant to claim now that he was unaware in any respect

_____

[8] In addition to this oral colloquy, Appellant initialed, signed, and dated a written guilty plea colloquy which was made part of the certified record. **See** Plea Agreement, 5/6/2014. In that colloquy, Appellant acknowledged, *inter alia*, that he understood the nature of the charges against him and had discussed the elements of the crimes with his attorney.

of either the nature of the charges against him or of the elements of third-degree murder is simply incredible. Accordingly, we hold Attorney Russo was not ineffective by failing to object during Appellant's guilty plea colloquy. Thus, Appellant has not demonstrated counsel's actions or inactions resulted in his entering a guilty plea unknowingly or involuntarily.

Appellant also claims that counsel was ineffective by coercing his guilty plea. **See** Appellant's Brief filed at 891 MDA 2016 (Appellant's First Brief) at 29-33; Appellant's Second Brief at 31-41. As noted *supra*, part of Appellant's guilty plea included a promise by the district attorney's office not to oppose Appellant's parole at his minimum so long as certain conditions are met. Appellant now complains that the "very wording of the [aforementioned] additional term can only be construed as a threat or a direct or implied promise or implied exertion over the parole board." Appellant's Second Brief at 33. Appellant suggests that the trial court and trial counsel "knew that the Commonwealth was making an unfillable promise to Appellant" and permitted it anyway. **Id**.

First, to the extent Appellant is claiming that the district attorney could not fulfill this promise, he is incorrect. The district attorney can make a recommendation to the parole board.[9] Notably, Appellant has not alleged that the district attorney has or has not actually said anything to the parole

---

[9] **See** 61 Pa.C.S. § 6135(a)(2).

board.  Moreover, we fail to see how the district attorney's promise not to oppose parole under certain circumstances constitutes any type of threat. Accordingly, trial counsel was not ineffective in counseling Appellant to accept a plea agreement that included this term.  No relief is due.

We now turn to the issue of whether either Attorney Russo or Attorney Wevodau was ineffective by failing to file a post-sentence motion to withdraw Appellant's guilty plea.[10]  **See** Appellant's First Brief at 16-21.

---

[10]  We are cognizant that Appellant filed *pro se* a post-sentence motion. "An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court." Pa.R.Crim.P. 120(A)(4).  The record does not show that Attorney Russo was granted leave to withdraw his appearance.  In addition, the transcript from the guilty plea and sentencing hearing reveals that Attorney Russo was supposed to represent Appellant through his direct appeal. **See** N.T., 5/1/2014, at 20.

Accordingly, because "Appellant was represented by counsel at the time he filed his *pro se* motion for reconsideration[, it] was a nullity." **Reid**, 117 A.3d at 781.  Rather than the trial court's ruling on the motion, the clerk of courts should have complied with the mandates of Pa.R.Crim.P. 576(A)(4).

> In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt.

Pa. R. Crim. P. 576(A)(4).

*(Footnote Continued Next Page)*

"[I]n [**Commonwealth v.**] **Reaves**, [923 A.2d 1119, 1128-29 (Pa. 2007),] we held an attorney's failure to file a post-sentence motion preserving a particular sentencing claim did not operate to entirely foreclose appellate review, but merely waive[d] … those claims subject to issue preservation requirements which were not otherwise properly preserved." **Commonwealth v. Rosado**, 150 A.3d 425, 432 (Pa. 2016) (internal quotation marks omitted). Thus, in order to prevail on a claim that counsel was ineffective in failing to file a post-sentence motion, a petitioner must prove he was actually prejudiced. **See Reaves**, 923 A.2d at 1133. "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Commonwealth v. King**, 57 A.3d 607, 613 (Pa. 2012). Therefore, under these circumstances, Appellant has to demonstrate there is a reasonable probability he would have prevailed on a post-sentence motion to withdraw his guilty plea.

We consider this claim mindful of the following.

[A]fter the court has imposed a sentence, a defendant can withdraw his guilty plea only where necessary to correct a manifest injustice. [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices.

_(Footnote Continued)_ ―――――――――

However, this procedure did not occur. Nevertheless, because we conclude _infra_ that Appellant was not prejudiced, he is not entitled to relief for these procedural missteps.

\*\*\*

> To be valid [under the manifest injustice standard], a guilty plea must be knowingly, voluntarily and intelligently entered. [A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly.

*Kpou*, 153 A.3d at 1020 (internal citations and quotation marks omitted).[11]

We have already held *supra* that Appellant has not convinced us that he is entitled to withdrawal of his guilty plea as being entered unknowingly, unintelligently, and involuntarily. Thus, Appellant cannot demonstrate that he was actually prejudiced by the failure of either counsel to file a post-sentence motion to withdraw his guilty plea.

We now consider whether Attorney Shreve was ineffective for withdrawing Appellant's direct appeal and whether the PCRA court erred by not reinstating Appellant's direct appeal rights.[12] *See* Appellant's First Brief

_____

[11] We bear in mind that

> [t]he standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, … under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa. Super. 2016).
[12] Appellant also argues that Attorney Russo was ineffective for failing to file a direct appeal. *See* Appellant's First Brief at 13, 16-22. However, any prejudice that could have ensued from this failure was alleviated when
*(Footnote Continued Next Page)*

- 19 -

at 11-15; 22-29. In support of these arguments, Appellant suggests that Attorney Shreve should have pursued issues related to Appellant's unknowing and involuntary guilty plea. *See* Appellant's First Brief at 27-33.

We point out first that "upon entering a guilty plea[,] [Appellant] waive[d] his right to challenge on appeal all non-jurisdictional defects except the legality of his sentence and the validity of his plea." ***Commonwealth v. Rush***, 909 A.2d 805, 807 (Pa. Super. 2006). Thus, in order to prevail on his claim that counsel was ineffective for withdrawing his direct appeal, Appellant has to demonstrate that he would have prevailed as to one of these issues. We have held *supra* that Appellant's guilty plea was entered knowingly, intelligently, and voluntarily. Additionally, Appellant has not raised any issue concerning the legality of his sentence or the jurisdiction of the trial court.[13] Accordingly, counsel cannot be ineffective for withdrawing

*(Footnote Continued)* ————————————

Attorney Wevodau filed a direct appeal. Additionally, Appellant argues that Attorney Wevodau was ineffective both by abandoning him and in the way she handled the direct appeal. *Id*. at 14, 22-26. However, Appellant's rights were in no way impeded when Attorney Wevodau informed the court that she could no longer represent Appellant and that Attorney Shreve should be appointed. Additionally, Appellant's argument that Attorney Wevodau was ineffective for failing to file a concise statement of errors complained of on appeal is without merit because Attorney Shreve withdrew the direct appeal.

[13] Appellant alleges that the provision in his plea agreement regarding the fact that the District Attorney's Office will not object at the parole board to Appellant's release at his minimum date absent certain circumstances raises a question about the legality of his sentence. Appellant devotes several pages of his brief to this issue. *See* Appellant's First Brief at 29-31; Appellant's Second Brief at 31-35. However, despite Appellant's claim that
*(Footnote Continued Next Page)*

Appellant's direct appeal because the issues Appellant could have litigated would not have provided him any relief.

We now consider the numerous additional issues Appellant had with respect to Attorney Russo's representation of him up until Appellant pled guilty. By way of background, Appellant was arrested in early 2009 and was denied bail. A criminal information was filed in April of 2009, and after numerous continuances, Appellant filed his motion to suppress on November 29, 2011. A hearing on that motion was held on January 9, 2012, and after additional briefing, the trial court denied the motion on August 3, 2012. Appellant filed an interlocutory appeal from that order, which then delayed the case until this Court quashed the appeal in November 2013. On Wednesday, April 30 and Thursday, May 1, 2014, Appellant selected his jury. After the jury was empaneled, Appellant pled guilty in the late afternoon of May 1, 2014. Trial had been scheduled to begin on Monday, May 5, 2014.

Appellant now claims that Attorney Russo was ineffective in his trial preparation; specifically he suggests that counsel did not obtain transcripts of the wiretapped phone conversations in a timely fashion and never obtained the original audio. ***See*** Appellant's Second Brief at 19-27. Appellant also suggests that Attorney Russo was ineffective for not spending adequate time preparing for this case and for not interviewing certain witnesses. ***Id***.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

this relates to the legality of his sentence, we cannot figure out what Appellant is actually arguing.

- 21 -

at 45-49. **See also id** at 49-59 (setting forth various things that Appellant claims that Attorney Russo did not do, as well as arguing that Attorney Russo delayed the case unnecessarily).

We consider all of these issues together bearing in mind that "with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial." **Commonwealth v. Timchak**, 69 A.3d 765, 770 (Pa. Super. 2013).

Here, Appellant has failed to convince this Court that any of the aforementioned errors either individually or together would have compelled Appellant to go to trial under these circumstances. Included in the certified record are numerous letters between Appellant and Attorney Russo discussing the preparations for the case. It is clear that Attorney Russo continuously requested and received discovery. Attorney Russo did ask for and obtain numerous continuances in this case; however, he did so in order to obtain the volumes of discovery the Commonwealth had gathered during the 17 years between Gosline's murder and Appellant's second arrest. Thus, we cannot conclude that Attorney Russo either prepared inadequately or delayed this case unnecessarily to the extent that Appellant's guilty plea was unlawfully induced.

We keep in mind that Appellant was literally on the eve of trial when he pled guilty. If Appellant was so intent on his exoneration, he could have

proceeded to trial just days later. Instead, he entered into a negotiated guilty plea where he admitted that he killed Gosline. Based on the foregoing, we conclude that Appellant has not demonstrated to this Court that Attorney Russo's actions or inactions prejudiced him in any way. Accordingly, he is not entitled to relief.

Appeal docketed at 891 MDA 2016 from the order entered on September 17, 2015 is quashed. Order entered March 22, 2016 and docketed at appeal number 892 MDA 2016 is affirmed. Motion to strike is denied. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2017